■ USI CAPITAL AND LEASING, a Division of USI CREDIT CORP., Appellant-Respondent, v SIDNEY CHERTOCK, Respondent-Appellant, et al., Defendants.—Judgment, Supreme Court, New York County (Walter M. Schackman, J.), entered December 6, 1989, awarding plaintiff damages of $7,598.89 for net unpaid rental installments, late charges of $144.75, plus interest at 12% per annum from July 1, 1982 to September 8, 1989 in the sum of $6,675.02, for a total of $14,418.66, and attorneys fees of $7,000 against defendant Chertock based on the guaranty agreement dated August 17, 1979 with respect to defendant Hazardous' obligations under a lease agreement of the same date but denying judgment with respect to two subsequent lease agreements dated December 5, 1980, unanimously modified, on the law, to the extent of reversing that part of the judgment which dismissed plaintiff's claims with

respect to the guaranty of the second and third leases, granting plaintiff judgment with respect thereto and remanding for a hearing on any further counsel fees due plaintiff and, except as thus modified, affirmed, without costs or disbursements.

In 1978, Chertock invested $15,000 in and guaranteed various obligations of Hazardous Waste Disposal Corp. in return for 50% of the profits. Hazardous, which eventually went bankrupt in 1983, subsequently entered into three forklift-truck lease agreements with plaintiff's assignor, one on August 17, 1979 and two on December 5, 1980. Also on August 17, 1979, Chertock executed a continuing guaranty of Hazardous's obligations to plaintiff's assignor. Chertock is alleged to have executed two further personal guaranties in connection with each of the second and third leases. Chertock claimed all three guaranties were forgeries. After a trial, the IAS court found that only the first guaranty was authentic. Although finding Chertock so liable, it only granted judgment for the obligations under the first lease, finding that, despite the plain language indicating it was a continuing guaranty, the parties never so intended because plaintiff's assignor sought Chertock's personal guaranty of the subsequent December 5, 1980 lease agreements. However innovative such a ruling might appear in terms of compromising the matter, it is clearly flawed and erroneous. Accordingly, we modify to grant plaintiff judgment under the August 17, 1979 continuing guaranty for Hazardous's obligations under both the second and third lease agreements.

The August 17, 1979 guaranty was, by its express terms, "an absolute, unconditional, continuing guaranty of payment" of the "payment and performance of all indebtedness and obligations of [o]bligor to [o]bligee of every kind and description, direct or indirect, primary or secondary, absolute or contingent or due or to become due * * * whether now or hereafter arising under the [a]greement or any other present or future agreement, document or instrument now or hereafter executed and delivered by [o]bligor to [o]bligee". It is well settled that "where a question of intention is determinable by written agreements, the question is one of law, appropriately decided by an appellate court". *(Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.,* 32 NY2d 285, 291.) Personal guaranties which contain language of a continuing obligation are enforceable and survive payment of the original indebtedness. *(See, Chemical Bank v Sepler,* 60 NY2d 289.) "Unless the parties to a continuing guarantee provide otherwise in the writing, such a guarantee is not limited to the life of loans

executed contemporaneously therewith * * * and generally cannot expire by mere conduct * * * change of circumstances * * * or lapse of time". *(Supra,* at 294.) The IAS court's excuse for ignoring the plain language of the August 17, 1979 continuing guaranty was the attempt by plaintiff's assignor to secure guaranties for each of the subsequent leases. Paragraph 7 of the continuing guaranty, however, provides that any change, waiver, termination or discharge of the guaranty, or any of its terms, can be effected only by a writing signed by the party "against which enforcement of the change, waiver, discharge or termination is sought." Here, there is no such evidence of termination or modification of the continuing guaranty. In a similar factual setting, this court has held that obtaining "a new guarantee on the subsequent loan does not extinguish the initial obligation * * * absent a writing to that effect". *(Chemical Bank v Wasserman,* 45 AD2d 703, *affd* 37 NY2d 249; *see, Nanuet Natl. Bank v Rom,* 96 AD2d 898.) Thus, the IAS court improperly disregarded the unambiguous terms of the continuing guaranty and looked to the subsequent transactions to determine the intent of the parties at the time of the execution of the continuing guaranty.

Chertock also argues that since the continuing guaranty refers to the obligor by the name "Hazardous Waste Disposal Corporation", while the second and third leases were executed by "Hazardous Waste Disposal, Inc.", they were executed by a different party and, thus, the continuing guaranty does not cover the two latter agreements. It is well settled, however, that "an immaterial variance in the corporate name * * * does not defeat the intention of the parties to bind the corporation." *(Hellenic Lines v Winkler,* 249 F Supp 771, 775.) Thus, the insignificant difference here is of no moment.

We have considered the remaining arguments on these cross appeals and find that they are without merit. While we grant judgment to plaintiff on the second and third lease transactions, we remand for the appropriate disposition of plaintiff's claim for additional attorney's fees incurred in enforcing Chertock's obligations under the continuing guaranty with respect to these agreements. Concur—Sullivan, J. P., Rosenberger, Wallach, Kupferman and Smith, JJ.